IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOREEN VANSELOUS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY | : | |
| INTERMEDIATE UNIT NO. 22 | : | NO. 13-4805 |

**REPORT AND RECOMMENDATION**

THOMAS J. RUETER                                                                               January 24, 2014
United States Magistrate Judge

       Presently before the court is the motion to dismiss plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 3) (the "Motion") filed by defendant Bucks County Intermediate Unit No. 22, and plaintiff's response thereto (Doc. 5).  For the following reasons, the court recommends that the motion be granted.

**I.    BACKGROUND**

       In the Complaint (Doc. 1) (the "Complaint"), plaintiff, Doreen Vanselous, alleges that Defendant discriminated against her in violation of her rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"),[1] the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. (the

---

[1]    The ADAAA became effective January 1, 2009.  See Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (codified at 29 U.S.C. § 705).  The ADAAA does not have retroactive effect, see Weidow v. Scranton Sch. Dist., 460 F.App'x 181, 185 (3d Cir. 2012) (not precedential), but is applicable to the case at bar, as the alleged discriminatory conduct occurred after January 1, 2009.  See Eastman v. Research Pharm., Inc., 2013 WL 3949236, at *8 (E.D. Pa. Aug. 1, 2013) (applying ADAAA to a case in which the discriminatory conduct, i.e., the employee's termination, occurred after January 1, 2009).

"Rehabilitation Act"), the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 955(a) et seq. ("PHRA"). Plaintiff represents that she was employed by defendant for approximately eleven years as a special education teacher for deaf and hard of hearing students, until she was constructively discharged from her employment. (Compl. ¶ 12.) Through the Motion, defendant seeks dismissal of plaintiff's Complaint in its entirety. Defendant contends that plaintiff's ADA claims (Counts I, II and III) and PHRA claim (Count VI) should be dismissed for failure to properly exhaust administrative remedies. (Mot. at 5-6.) Defendant also argues that plaintiff's claim under Section 504 of the Rehabilitation Act (Count IV) should be dismissed as untimely and because it fails to state a claim for which relief can be granted. Id. at 6-8. Moreover, defendant contends that plaintiff's IDEA claim (Count V) should be dismissed because plaintiff does not have standing. Id. at 8-9. Defendant further argues that punitive damages are not recoverable against it. Id. at 9-10.

According to the Complaint, on July 26, 2010, plaintiff "was called for a meeting for the purpose of discipline for reasons that were unspecified." (Compl. ¶ 16.) At the meeting, plaintiff was informed that she had "communication issues" and "difficulty letting things go," that she was "sensitive to criticism," and that she was "inappropriate with professionals and parents." Id. ¶ 17. Plaintiff was given a "'plan of action' which she was required to follow or be terminated from employment." Id. ¶ 19. One requirement of the "plan of action" was that plaintiff see a psychologist. Id. ¶ 20. Plaintiff consulted a psychologist who sought clarification from defendant concerning the reason for the consultation. Id. ¶ 22. The psychologist did not receive such clarification. Id. Until September 2010, plaintiff's supervisor was Dr. Kevin

Miller. Id. ¶ 15. After that time, plaintiff was supervised by Marguerite Vasconcellas. Id.

On February 10, 2011, plaintiff met with defendant and was informed that she did not follow through with her "plan of action," which included the consultation with the psychologist. Id. ¶ 23. Plaintiff was told that she would be recommended for termination unless she submitted her resignation. Id. ¶ 24. Plaintiff also was informed that she would be reported to the State, "which would be unfavorable and which would prohibit her from working in her chosen profession." Id. Plaintiff's supervisor at the time, Ms. Vasconcellas allegedly stated to plaintiff, "[y]ou'll never work again." Id. According to plaintiff, Ms. Vasconcellas, questioned whether plaintiff had fibromyalgia. Id. ¶ 25. Plaintiff avers that she had fibromyalgia, but that she did not consider herself disabled and did not share that information with her employer. Id. ¶ 26. Plaintiff resigned from her employment on February 16, 2011; her last day of work was February 18, 2011. Id. ¶ 28.

On December 13, 2011, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and contemporaneously with the Pennsylvania Human Relations Commission. See Compl., Exh. A. On May 30, 2013, plaintiff received a Dismissal and Notice of Rights, informing plaintiff that the EEOC did not have statutory jurisdiction over her charge. See Compl., Exh. B. On August 19, 2013, plaintiff filed the present action. (Doc. 1.)

## II. DISCUSSION

When considering a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555-56 (2007)).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  The Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted).

  **A.** **ADA Claims (Counts I, II, and III) and PHRA Claim (Count VI)**

In her Complaint, plaintiff presents three claims under the ADA and a claim pursuant to the PHRA.  Specifically, plaintiff alleges: (1) that she was "regarded as" disabled in violation of the ADA (Count I); (2) that defendant violated the ADA by requiring plaintiff to consult with a psychologist without explanation or notice and by inquiring whether plaintiff possessed a specific disability, i.e., fibromyalgia (Count II); (3) that defendant retaliated against plaintiff because plaintiff was perceived as "excessively zealous in securing the rights of deaf and

hard of hearing students to an equal and quality education" in violation of the ADA (Count III); and (4) corresponding claims under the PHRA (Count VI). Defendant avers that these claims must be dismissed because plaintiff did not properly exhaust her administrative remedies. (Mot. 5-6.)

Before filing a complaint, a plaintiff alleging discrimination under the ADA must exhaust her administrative remedies by filing a charge with the EEOC. See 42 U.S.C. § 2000e–5(e)(1).[2] "The ensuing suit is limited to claims that are within the scope of the initial administrative charge." Williams v. E. Orange Cmty. Charter Sch., 396 F.App'x 895, 897 (3d Cir. 2010) (not precedential) (citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Antol, 82 F.3d at 1296.

In the case at bar, plaintiff's EEOC charge does not set forth any claim for employment-related discrimination that is actionable under the ADA. Plaintiff's EEOC complaint stated in its entirety:

> My name is Doreen Vanselous and I am filing this complaint against my former employer, Bucks County Intermediate Unit Number 22, where I was employed for eleven years as a teacher in special education. I am also filing this complaint against Bucks County on the basis that they are a joint employer with the Bucks County Intermediate Unit.
>
> As a consequence of advocating for my special needs children, I was continually harassed, discriminated against and ultimately forced to resign under circumstances which predicate constructive discharge.

---

[2] The ADA incorporates Title VII's enforcement procedures and remedies. See 42 U.S.C. § 12117(a); Eshelman v. Agere Sys., Inc., 554 F.3d 426, 440 n.7 (3d Cir. 2009).

> My last day of work was February 18, 2011.
>
> It should be noted that as a teacher of deaf children, I never compromised the needs of my students and after I refused to do so and continued to advocate on their behalf, I was subjected to continual and ongoing harassment until finally my work situation became so impossible that I had no choice but to resign.

See EEOC Charge (attached as Exh. A to Pl.'s Compl.).  In so stating, plaintiff did not put the EEOC on notice that defendant discriminated against her in violation of the ADA.  Plaintiff's statement that she faced "continual and ongoing harassment" because she advocated on behalf of deaf and hard of hearing children does not allege that plaintiff was disabled, that defendant regarded plaintiff as disabled or took any action based on plaintiff's disability, or that defendant acted in violation of the ADA.

Indeed, plaintiff was informed by letter dated May 30, 2013 that "the evidence does not indicate that a violation of the statutes enforced by the . . . [EEOC] has occurred. . . ." See EEOC Dismissal and Notice of Rights (attached as Exh. B to Pl.'s Compl.).  The Dismissal and Notice of Rights letter stated:

> You allege that you were harassed and constructively discharged because you acted as an advocate for your students with special needs.  The Commission has jurisdiction under Title I of the ADA (Americans with Disabilities Act of 1990, as amended) which prohibits the discrimination by employers against qualified workers with disabilities.  The Commission also has jurisdiction under Title V of the ADA, which contains miscellaneous provisions, including a provision against retaliation that apply to Title I.  Your allegations fall under Title III, which prohibits discrimination in public accommodations, and Title II, which prohibits discrimination against a qualified individual with a disability by public entities.  As Respondent is not an employer under the ADA for purposes of failing to provide special needs students and not employees with accommodations, the EEOC does not have jurisdiction over your charge.

Id.  Thus, because plaintiff failed to present an appropriate employment-related claim under the

6

ADA, the EEOC did not have jurisdiction to address plaintiff's charge.[3]

Even construing plaintiff's EEOC charge liberally, the charge does not allege an appropriate violation of the ADA. The EEOC charge was narrowly focused on plaintiff's claim that she was harassed because she advocated on behalf of her students. Plaintiff simply did not raise in the EEOC charge the ADA and PHRA claims that she presently raises in her Complaint. Thus, plaintiff failed to exhaust administrative remedies for the ADA and PHRA claims. See, e.g., Ocasio v. City of Bethlehem, 2009 WL 37518, at *3-4 (E.D. Pa. Jan. 7, 2009) (granting motion to dismiss for failure to exhaust administrative remedies with respect to claims that were not alleged or factually supported by the contents of the EEOC charge). Therefore, the court

---

[3] In her response to the Motion, plaintiff contends that "if, in the course of its investigation, the EEOC considered issues other than those strictly raised in the EEOC charge, those issues may become the basis of a subsequent suit," citing to Waiters v. Parsons, 729 F.2d 233, 235 (3d Cir. 1984) and Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976). However, plaintiff's reliance upon Waiters and Ostapowicz is misplaced. In Waiters, the Third Circuit noted that a claimant must file a complaint with the EEOC before filing a federal lawsuit, in order to provide a waiting period during which the EEOC will attempt to resolve the dispute without resorting to litigation. Waiters, 729 F.2d at 237. The Waiters court noted that "[w]here discriminatory actions continue after the filing of an EEOC complaint, however, the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period." Id. The court stated that the relevant test in determining whether a plaintiff must exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom. Id. In Waiters, the court permitted the plaintiff's suit to proceed without exhausting administrative remedies because the core grievance of the lawsuit was the same issue raised in the prior EEOC complaint and it was clear that the allegations of the plaintiff's complaint fell within the scope of the prior complaint and investigation. In Ostapowicz, the Third Circuit held that the scope of a Title VII action is defined by the limits of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. 541 F.2d 394 (3d Cir. 1976). Thus, neither Waiters nor Ostapowicz stand for the proposition that a plaintiff may proceed in a federal lawsuit on claims that the plaintiff failed to raise before the EEOC. As the EEOC indicated in the Dismissal and Notice of Rights letter, plaintiff did not present to the EEOC a claim that defendant discriminated against her in violation of the ADA. Waiters and Ostapowicz simply do not stand for the proposition upon which plaintiff seeks to rely.

recommends that defendant's motion to dismiss be granted with respect to plaintiff's claims of disability discrimination under the ADA and PHRA (Counts I, II, III and VI). See Jones v. Camden City Bd. of Educ., 499 F.App'x 127 (3d Cir. 2012) (not precedential) (affirming dismissal of complaint that raised, inter alia, disability discrimination claims under the ADA for failure to exhaust administrative remedies).[4]

### B.  Rehabilitation Act Claim

In Count IV of the Complaint, plaintiff brings a claim pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(d), which prohibits retaliation against those who report or oppose unlawful acts under the law. Plaintiff claims that defendant retaliated against her "because she was perceived as excessively zealous in securing the rights of deaf and hard of hearing students." See Compl. ¶¶ 55-65. Defendant contends that this claim should be dismissed as untimely. (Mot. at 6-7.)

Section 504 of the Rehabilitation Act incorporates by reference the substantive standards of the ADA. Kendall v. Postmaster General of U.S., 2013 WL 5663872, at *2 (3d Cir. Oct. 18, 2013) (not precedential) (citing Shiring v. Runyon, 90 F.3d 827, 830 (3d Cir. 1996)). "Section 503(a) of the ADA prohibits retaliation, providing that: 'No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by

---

[4] The court notes that plaintiff has not sought leave to amend the Complaint. Nevertheless, "[e]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citations omitted); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (dismissal without leave to amend is warranted only on grounds of bad faith, undue delay, prejudice, or futility). Because plaintiff has failed to exhaust her administrative remedies, amendment of the complaint would be futile and plaintiff's ADA and PHRA claims should be dismissed.

this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'" Id. (citing 42 U.S.C. § 12203(a)). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) there was a causal connection between the protected activity and the adverse employment action. Kania v. Potter, 358 F.App'x 338, 344 (3d Cir. 2009) (not precedential) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

In addition, a claim brought under Section 504 of the Rehabilitation Act is subject to a two-year statute of limitations period. See D.K. v. Abington School Dist., 696 F.3d 233, 244 (3d Cir. 2012). Defendant argues that plaintiff was aware, or should have been aware, of the source of her injury when she submitted her resignation on February 16, 2011. According to defendant, to be timely, plaintiff should have filed a claim by February 15, 2013. (Mot. at 7.)

Plaintiff acknowledges that her Complaint was filed on August 19, 2013, more than two years after her constructive discharge on February 16, 2011, and that a Rehabilitation Act claim is governed by a two-year statute of limitations. (Resp. at 10.) However, plaintiff contends that the principles of equitable tolling should be applied. Id. at 10-11. The equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision where: (1) a defendant actively misleads a plaintiff with respect to her cause of action; (2) the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. See Lake v. Arnold, 232 F.3d 360, 370 n. 9 (3d Cir. 2000). The doctrine of equitable tolling should be applied sparingly. Podobnik v. U.S. Postal Serv., 409 F.3d 584, 591

9

(3d Cir. 2005) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).  The plaintiff bears the "burden of establishing the equitable tolling exception."  Courtney v. La Salle Univ., 124 F.3d 499, 505 (3d Cir. 1997).

In the present case, plaintiff does not allege that defendant has actively misled her or that in some extraordinary way she has been prevented from asserting her rights.  Rather, plaintiff claims that the statute of limitations should be tolled because she timely asserted her rights in the wrong forum.  That is, plaintiff contends that she mistakenly asserted her rights under Section 504 of the Rehabilitation Act before the EEOC.  (Resp. at 11.)

The Third Circuit has stated that "running throughout the equitable estoppel cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim."  Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997).  Failure to demonstrate diligence can prevent application of equitable principles.  See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

Based on the record before the court, plaintiff has not demonstrated that she exercised due diligence to preserve her Rehabilitation Act claim.  She has not has not presented sufficient evidence for the court to make such determination.  In the Complaint, plaintiff represents that she resigned from her employment with defendant on February 16, 2011 and her last day of work was February 18, 2011.  (Compl. ¶ 28.)  On December 13, 2011, plaintiff, acting

pro se, filed a charge with the EEOC. On May 30, 2013, plaintiff received the Dismissal and Notice of Rights from the EEOC. Less than three months after receiving notice that the EEOC did not have statutory jurisdiction over her charge, plaintiff filed her Complaint with this court, on August 19, 2013. In her response to defendant's argument that Count IV of the Complaint should be dismissed as untimely, after setting forth the legal standard for equitable tolling, plaintiff merely states, "[h]ere, arguably the Plaintiff asserted her Section 504 rights before the EEOC, which was the wrong forum, and thus the statute of limitations should be tolled." See Resp. at 10-11. It may be that the doctrine of equitable tolling should be applied to the facts of the case at bar; however, plaintiff has not met her burden of establishing the equitable tolling exception. See Zied v. Barnhart, 418 F.App'x 109, 114 (3d Cir. 2011) (not precedential) (affirming dismissal of, inter alia, Rehabilitation Act claim for failure to comply with statute of limitations and finding that pro se plaintiff's mistaken belief about the applicable law did not trigger application of equitable tolling exception). See also Miller v. Cadmus Commc'ns, 2010 WL 762312, at *5-6 (E.D. Pa. Mar. 1, 2010) (dismissing plaintiff's claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621–34, because plaintiff failed to adequately explain his contention that equitable tolling applied and finding that plaintiff's proffered reason was insufficient to satisfy the requirements of the doctrine).

    Nevertheless, the court recommends that, with respect to Count IV of plaintiff's Complaint, the motion to dismiss be granted without prejudice. The court further recommends that plaintiff be granted leave to amend the Complaint under Fed. R. Civ. P. 15 to articulate a basis for the application of equitable tolling to the statute of limitations on plaintiff's Rehabilitation Act claim. See Fanciullo v. U.S. Postal Serv., 2013 WL 5467169, at *8 (D.N.J.

Sept. 30, 2013) (finding that plaintiff's "mere mention of the equitable doctrine in an opposition brief, without more, cannot be enough to withstand dismissal of his ADEA claim" but dismissing ADEA claim without prejudice to provide plaintiff an opportunity to amend his complaint).  If plaintiff fails to file an amended complaint within the time specified by the district court, Count IV should be dismissed with prejudice and the case closed.[5]

      C.      **IDEA Claim**

In Count V of her Complaint, plaintiff alleges that defendant acted in violation of the IDEA because the IDEA "prohibits retaliation against those who report or oppose unlawful acts under the law."  See Compl. at ¶¶ 66-77.  Plaintiff contends that defendant retaliated against her "because she was perceived as excessively zealous in securing the rights of deaf and hard of hearing students to an equal and quality education" in violation of the IDEA.  Id. ¶ 75.

---

[5] Defendant also contends that even if plaintiff's Section 504 claim is timely filed, the Complaint fails to state a claim for which relief can be granted.  (Mot. at 7-8.)  Plaintiff responds that she has alleged facts specific enough to state a claim for a violation of Section 504 of the Rehabilitation Act.  (Resp. at 11.)  Plaintiff argues that it is a matter of factual dispute whether the alleged retaliatory action occurred in close proximity to plaintiff's purported protected activity.  Id. at 11-12.  Thus, according to plaintiff, this issue should be decided by the court after discovery has been conducted and the record has been more fully developed.  Id. at 12.

At the motion to dismiss stage, this court must determine whether plaintiff properly pleaded a claim of retaliation under the Rehabilitation Act, not whether plaintiff has established a prima facie case of retaliation under the Rehabilitation Act.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("Even post-Twombly, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'").  The court must accept as true all of the factual allegations contained in the complaint and draw reasonable inferences in favor of the plaintiff.  Iqbal, 556 U.S. at 678.  To survive the motion to dismiss, the Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  See id.  In her Complaint, plaintiff alleges that defendant retaliated against plaintiff because she was perceived as excessively zealous in securing the rights of deaf and hard of hearing students.  See Compl. at ¶¶ 55-65.  Under the standards of Fowler, Twombly and Iqbal, plaintiff's Complaint states a claim for relief under Section 504 of the Rehabilitation Act that is plausible on its face.

Defendant moves to dismiss Count V of the Complaint, arguing that plaintiff does not have standing to bring such a claim, and even if she did, the claim is beyond the applicable statute of limitations period. (Mot. at 8.)

The court agrees with defendant that plaintiff does not have standing to bring an IDEA claim. As defendant notes, in <u>Lawrence Tp. Bd. of Educ. v. New Jersey</u>, 417 F.3d 368, 371 (3d Cir. 2005), the Third Circuit concluded that a local educational agency ("LEA") did not have standing to bring a claim under the IDEA. The court reasoned:

> Federal courts are courts of limited jurisdiction, and may hear actions only where authorized to do so by Congress. U.S. Const. Art. III, § 1. The Supreme Court of the United States has made it quite clear that:
>> "private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."
>
> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286–87, 121 S. Ct. 1511, 149 L.Ed. 2d 517 (2001) (internal citations omitted).
>
> Section 1415(a) of the IDEA, entitled "establishment of procedures," provides that procedures shall be established and maintained "in accordance with this section to <u>ensure that children with disabilities and their parents</u> are guaranteed procedural safeguards with respect to the provision of [a free appropriate public education]." 20 U.S.C. § 1415(a) (2003) (emphasis added). Similarly, section 1412(a)(6), which is entitled "procedural safeguards," provides that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section [1415]." 20 U.S.C. § 1412(a)(6)(A) (2003).
>
> This language strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents. Indeed, section 1415(b), which sets forth the types of procedures required, limits most relief under those procedures to the parents of a disabled child.
>
> Nonetheless, section 1415(b)(6), the provision upon which Lawrence Township relies, contains no such limitation. Thus, the Township argues that the

> broader language of section 1415(b)(6) – "an opportunity to present complaints with respect to any matter . . ." – clearly demonstrates that Congress intended to permit persons or entities other than parents and children to bring an action under the IDEA. We disagree. While section 1415(b)(6) is crafted more broadly than other subsections, this fact alone does not indicate an intent to permit a private right of action by an LEA against a state. Instead, when examined in the context of the IDEA as a whole, the language of section 1415(b)(6) is at best ambiguous.

Id.[6] Thus, in Lawrence Tp. Bd. of Educ. the Third Circuit was persuaded that the language of the IDEA was drafted to provide a private right of action only to disabled children and their parents.

Furthermore, in Jones v. Camden City Bd. of Educ., 499 F.App'x 127 (3d Cir. 2012) (not precedential), the Third Circuit recently upheld a district court's finding that a teacher did not have standing to litigate an IDEA claim. The court stated: "[The IDEA statutory] language strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents."

In support of her argument that the IDEA prohibits retaliation against those who report or oppose unlawful acts under the law, plaintiff cites to Hesling v. Avon Grove Sch. Dist., 428 F.Supp. 2d 262 (E.D. Pa. 2006). In that case, however, the court permitted the parent of a special needs student to pursue a claim for retaliation under the IDEA. Id. at 274.

Thus, the court is not persuaded by plaintiff's argument that, as a teacher, she has standing to pursue a claim under the IDEA. Based on the foregoing case law, the court recommends that defendant's motion to dismiss be granted with respect to plaintiff's retaliation

---

[6] The IDEA was amended in December, 2004, with an effective date of July 1, 2005. See Pub.L. 108–446, Title I, § 101, 118 Stat. 2647. Because the amendments had prospective application only, the court in Lawrence Twp. Bd. of Educ. applied the provisions in effect at the time the complaint was filed in 2003. 417 F.3d at 371. Nevertheless, the 2005 amendments do not impact the validity of the Third Circuit's analysis.

claim under the IDEA (Count V).[7]

**III.    CONCLUSION**

For the foregoing reasons, the court respectfully recommends that the motion to dismiss (Doc. 3) be **GRANTED** as follows:

1.    Defendant's motion is **GRANTED WITHOUT PREJUDICE** with regard to plaintiff's claim in Count IV under the Rehabilitation Act.  Plaintiff should be granted leave to file an amended complaint articulating a basis for the application of equitable tolling to the statute of limitations.[8]  If plaintiff does not file an amended complaint within the time specified by the court, the court should dismiss this count with prejudice and close the case.

2.    Defendant's motion is **GRANTED WITH PREJUDICE** as to plaintiff's claims under the ADA (Counts I, II, and III), the PHRA (Count VI) and the IDEA (Count V).

---

[7]    Because plaintiff lacks standing to bring a claim under the IDEA, the court need not address defendant's alternative argument that an IDEA claim should be dismissed as untimely.

[8]    The court further recommends that if plaintiff is granted leave to file an amended complaint to articulate a basis for the application of equitable tolling to the statute of limitations on plaintiff's claim under the Rehabilitation Act, plaintiff also should be granted leave to amend the Complaint to address defendant's argument in the Motion that punitive damages are not recoverable against it under the ADA, PHRA, Rehabilitation Act and IDEA.  See Mot. at 9-10, Resp. at 15.

The parties may file objections to the Report and Recommendation.  <u>See</u> Loc. R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

\_\_/s/ Thomas J.  Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOREEN VANSELOUS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY | : | |
| INTERMEDIATE UNIT NO. 22 | : | NO.  13-4805 |

**ORDER**

AND NOW, this            day of                      , 2014, upon careful and independent consideration of the pleadings and record herein, and after review of the Report and Recommendation of United States Magistrate Judge Thomas J. Rueter, it is hereby

**ORDERED**

1. The Report and Recommendation is **APPROVED** and **ADOPTED**; and

2. The Motion of Defendant to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) filed by defendant Bucks County Intermediate Unit No. 22 (Doc. 3) is **GRANTED** as follows:

   a. Defendant's motion is **GRANTED WITHOUT PREJUDICE** with regard to Count IV of the Complaint, plaintiff's claim under the Rehabilitation Act. Plaintiff is granted leave to file an amended complaint articulating a basis for the application of equitable tolling to the statute of limitations and demonstrating that punitive damages are recoverable against defendant.  If plaintiff does not file an amended complaint within the time specified by the court, the court should dismiss this Count IV with prejudice and close the case.

   b. Defendant's motion is **GRANTED WITH PREJUDICE** as to plaintiff's

claims under the ADA (Counts I, II, and III), the PHRA (Count VI), and the IDEA (Count V).


BY THE COURT:


_____
EDUARDO C. ROBRENO,            J.